UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:

PETER T. DVORAK,

      Debtor.

Case No. 9:11-bk-7437

_____/

JOHN MCKAY,

      Plaintiff,

v.

Adversary Proceeding No.

PETER T. DVORAK,

      Defendant.

_____/

## COMPLAINT FOR FEDERAL SECURITIES FRAUD, STATE SECURITIES FRAUD, AND TO DETERMINE THE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §523

Plaintiff, John McKay ("Plaintiff"), by and through his counsel, for his Complaint against Defendant, Peter Dvorak ("Dvorak"), states as follows:

### Jurisdiction and Venue

1. This is a core proceeding to determine the dischargeability of certain debts owed Plaintiff by Defendant Peter T. Dvorak ("Defendant" or "Debtor" or "Dvorak"). This Court has jurisdiction pursuant to 28 U.S.C. §157(b)(2)(l) and 28 U.S.C. §1334.

2. Venue is proper pursuant to 28 U.S.C. §1409.

### Nature of Action

3. This is an action seeking nondischargeability of debts pursuant to 11 U.S.C. §523(a)(2)(A), §523(a)(4) and §523(a)(19) for federal securities fraud in violation of the

Securities and Exchange Act and Rule 10b-5, state securities fraud in violation of the Illinois Securities Law of 1953, 815 ILCS 5/1, *et seq.*, embezzlement, conversion, and Illinois common law fraud.

## Parties

4. Plaintiff is an investor who purchased investment contracts in three separate real estate investment ventures from the Debtor. Plaintiff also is the assignee and owner of all rights and claims previously owned by Amy McKay arising out of her investment contract purchase.

5. Plaintiff is a creditor of the Debtor in his bankruptcy proceeding pending before this Court. Plaintiff also is the assignee and owner of all rights and claims previously owned by Amy McKay arising out of her investment contract purchase.

6. Defendant is the individual Debtor having filed a voluntary Chapter 7 Bankruptcy in the afore-mentioned bankruptcy in the United States Middle District of Florida, Fort Myers Division, Case Number 9:11-bk-7437. The Plaintiff consents to the entry of a final judgment pursuant to Rule 7009(a) of the Federal Rules of Bankruptcy Procedure.

## General Fraudulent Scheme

7. Defendant solicited investments by Plaintiff commencing in or about 2006. Defendant held himself out as a successful real estate investor and developer. Defendant represented that his real estate investments always yielded significant positive returns.

8. Defendant further represented that his real estate investment ventures provided concrete pay-out dates when investors could reap significant returns on their investments, profiting from his efforts to enhance the value of the real estate projects. Defendant made these representations both orally and in writing to Plaintiff.

9. In reliance on these representations, Plaintiff began investing in ventures controlled by Defendant in the summer of 2006.

10. In or about August 2008, Plaintiff began receiving information suggesting that Defendants' representations were false. In August 2008, Plaintiff learned that Defendant had lied to him about Plaintiff's security interest in a mortgage purportedly recorded to protect his investment contract and that Defendant had provided Plaintiff with a fraudulent and forged recorder of deeds stamp in an effort to dupe Plaintiff into believing that a mortgage had been properly recorded to secure his investment. Instead of recording the mortgage for Plaintiff, Defendant simply copied the recorder's stamp that appears on a bank's properly recorded mortgage and affixed it to Plaintiff's mortgage, falsely representing that Plaintiff's mortgage had been properly recorded, purportedly perfecting Plaintiff's security interest as first mortgagee.

11. Despite further demands of Plaintiff, Defendant has not returned the invested funds and has refused to account for the lost investments.

12. It appears that Defendant has engaged in a Ponzi scheme, soliciting and receiving substantial investments, diverting the funds for his own use, and to repay other investors, wiping out the savings of innocent investors, such as Plaintiff.

### Plaintiff's Investments

### The Danville Investment

13. Plaintiff first invested $1 million with Pinnacle Properties Management Group, LLC, which was controlled by Defendant. Defendant represented that Plaintiff's investment was secured by a first mortgage on a property in Danville, Illinois owned by Danville Investment Group. Plaintiff executed a $1 million note on May 30, 2006. Defendant represented that a first mortgage was recorded on that initial $1 million note.

3

14. On June 28, 2006, Defendant received another $500,000 investment from Plaintiff for the Danville project, replacing the $1 million note with a $1.5 million note. Defendant represented that his attorney would replace the previously recorded $1 million mortgage with a new first mortgage covering Plaintiff's $1.5 million investment.

15. At all times, Defendant represented that the $1.5 million investment was secured by a first mortgage on the Danville property that Defendant had recorded. Defendant sent a copy of the recorded mortgage to Plaintiff on or about November 27, 2006.

16. Plaintiff invested the $1.5 million in the Danville project based on the representation that his investment would be taken out by October 27, 2007.

17. In January 2008, Plaintiff demanded payment on the notes and in response, Dvorak sent McKay a lease agreement for the Danville property, representing that he could now obtain financing to repay Plaintiff.

18. On or about January 28, 2008, Dvorak represented that "we are in awesome shape," reassuring Plaintiff that the venture was liquid and profitable, that multiple banks were bidding on the Danville property and refinancing efforts were progressing.

19. On August 9, 2008, Plaintiff first discovered that Dvorak's prior representation that Plaintiff's $1.5 million investment was secured by a first mortgage on the Danville property was false. Plaintiff obtained information from the county recorder of deeds indicating that the recorded mortgage Dvorak had previously sent Plaintiff was a false and forged document.

20. Instead of providing a first mortgage to Plaintiff, Dvorak had provided a first mortgage to Irwin Union, which later was paid and replaced by a first mortgage recorded by National City Bank. Plaintiff's mortgage was never recorded.

21. Dvorak further lied to Plaintiff about the recorded mortgage, contending that it was a "clerical error."

22. When confronted with the fact that Plaintiff's $1.5 million investment was not secured with the first mortgage as promised, Dvorak offered a second mortgage on a property in Lawrenceburg, Indiana, that he represented was appraised at $22,800,000 and that had a first mortgage of only $10,600,000. On or about August 8, 2008, Plaintiff decided to mitigate his losses on the $1.5 million investment by accepting the second mortgage on the Lawrenceburg property.

23. Dvorak's representations regarding the value of the Lawrenceburg property were false. Dvorak failed to disclose that the property needed $5 million of work in order to yield a value of $22,800,000.00. Approximately one month after accepting the second mortgage on Lawrenceburg, Plaintiff learned that Dvorak had received an offer to purchase the property for $4 million. The first mortgagor is foreclosing on the property with nothing left for Plaintiff.

24. Plaintiff has received only $460,000 of his original $1.5 million investment, for a loss of $1,040,000.

### Hotel Roberts

25. Dvorak induced Plaintiff to invest $750,000 in Hotel Roberts. Plaintiff initially invested $750,000 pursuant to a note dated December 13, 2006.

26. The security for the original $750,000 investment was Dvorak's membership interest in Historic Properties, LLC, and Plaintiff had the right to convert his $750,000 investment into an investment in the Pinnacle Opportunity Fund, another real estate investment contract under discussion at that time.

27. In late December 2006, Dvorak induced Plaintiff to pool his $750,000 investment with other funds up to $4 million that would be secured by a first mortgage on Hotel Roberts in Muncie, Indiana. Dvorak represented that Hotel Roberts was appraised at $4.25 million and that there were no outstanding mortgages on that property at that time in late December 2006.

28. In fact, unbeknownst to Plaintiff and contrary to Dvorak's representations, a first mortgage had already been recorded on Hotel Roberts.

29. Dvorak represented to Plaintiff on January 15, 2007, that the first mortgage on Hotel Roberts would be recorded the following day. Dvorak then sent to Plaintiff a copy of a recorded mortgage on Hotel Roberts, representing it to be a first mortgage.

30. Dvorak paid back other investors in the $4 million pool and represented to Plaintiff that Dvorak was tracking to take out or repay Plaintiff's investment in the second quarter of 2008.

31. In or about August 2008, Plaintiff learned for the first time that, contrary to Dvorak's prior representations, Plaintiff did not have a first mortgage on Hotel Roberts but instead was second to Farmer Bank. Dvorak represented to Plaintiff that the Farmer Bank first mortgage was "an accident" and that he would arrange for and provide a release of Farmer Bank's first mortgage. On or about August 18, 2008, Dvorak sent Plaintiff a release signed by Farmer Bank, representing that Plaintiff then had a first mortgage on Hotel Roberts.

32. However, the release was only on one of approximately 30 parcels that comprised the entire Hotel Roberts property, and thus Plaintiff had only a first mortgage on six-unit apartment attached to the hotel that was purchased for $120,000 and was later sold in 2009 for $50,000.

33. Dvorak continued to misrepresent that Plaintiff's mortgage interest in only one parcel was an error and that Plaintiff should have a first mortgage on all parcels.

34. Plaintiff has lost his entire $750,000 investment in Hotel Roberts. The hotel is defunct, no development into apartments has occurred, and, on information and belief, Dvorak has stripped all mechanicals from the building. Plaintiff's second mortgage interest is worthless.

### Buchanan Investment

35. On or about November 30, 2006, Plaintiff's wife at the time, Amy McKay, executed an investment contract with Buchanan Investment Group, LLC. Buchanan, controlled by Dvorak, owned real estate property in Berrien County, Michigan. Dvorak induced this investment in which Amy McKay agreed to invest $180,000 in Buchanan in exchange for a share in the net profits.

36. Amy McKay assigned all of her interest, rights and claims relating to the Buchanan investment to Plaintiff prior to April 20, 2011, the filing of the Defendant's bankruptcy case.

37. Pursuant to the Buchanan Agreement, Buchanan agreed to pay the sum of $180,000 plus 17.5% of the net profits from the sale of the Berrien County property or 17.5% of the net appraised value of the property on or before May 28, 2010.

38. Buchanan has not made any such payments and is in default of the Buchanan Agreement.

39. In inducing Amy McKay and Plaintiff to invest in the Buchanan Agreement, Defendant made representations regarding the capital structure of the Buchanan investment, which Amy McKay and Plaintiff relied upon as investors.

40. Defendant's representations regarding the Buchanan capital structure were false. In reality, Buchanan assumed much more debt than represented and diluted Plaintiff's investment so that it is now worthless.

### **Misrepresentations and Omissions by Defendant**

41. Defendant made various misrepresentations and omissions in soliciting the investments from Plaintiff.

42. Among other things, Defendant made the following misrepresentations and omissions:

   a. Defendant misrepresented that he had recorded a first mortgage on the Danville property securing Plaintiff's $1.5 million in Pinnacle;

   b. Defendant misrepresented the value of the Danville property;

   c. Defendant misrepresented that he had recorded a first mortgage on Hotel Roberts securing Plaintiff's $750,000 investment in Pinnacle;

   d. Defendant misrepresented that he had obtained a release from Farmer Bank with respect to its first mortgage on Hotel Roberts;

   e. Defendant misrepresented that Farmer Bank's first mortgage on Hotel Roberts was a "mistake;"

   f. Defendant misrepresented that Farmer Bank's release of mortgage was a complete release of the entire first mortgage on all of the Hotel Roberts property;

   g. Defendant misrepresented that the investment in the Buchanan Investment Group would result in payment of the profits or appreciation on the Berrien

County, Michigan property resulting from Defendant's and Buchanan's efforts;

h. Defendant misrepresented the capital structure of the Buchanan investment;

i. Defendant misrepresented the values of the Danville, Hotel Roberts, Lawrenceburg, Berrien County properties;

j. Defendants failed to disclose the first mortgage on the Hotel Roberts property held by Farmer Bank;

k. Defendants failed to disclose the first mortgages on the Danville property; and

l. Defendant failed to disclose that he had taken steps to dissolve Pinnacle in December 2009 without accounting to Plaintiff and other investors for the lost investment funds.

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made. Even if they had been so identified, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements. Alternatively, to the extent that the statutory safe harbor does apply to any statement pleaded herein, defendants are liable for those false statements because at the time of each of those statements were made, the particular speaker knew that the particular statement was false and/or the statement was authorized and/or approved by Defendant or a principal of Pinnacle who knew that those statements were false when made.

44. Plaintiff has retained the undersigned attorneys and has agreed to pay said attorneys a reasonable fee for their services rendered herein.

## Count I – Securities Fraud

## (Section 10b-5 of the Securities and Exchange Act of 1934 and Rule 10b-5)

45. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 44 above as if fully set forth herein.

46. Count I is brought pursuant to Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. §78j(b), and Securities and Exchange Act Rule 10b-5, 15 C.F.R. §240.1b-5.

47. Defendant violated Section 10(b) of the Exchange Act and Rule 10b-5 because he (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff in connection with his investments in Buchanan, Danville and Hotel Roberts in 2006.

48. Each of these misrepresentations and omissions was material in the sense that any similarly situated reasonable investor would have considered them important in deciding whether to purchase such investment contracts.

49. The above representations regarding the real estate properties, the security interests, capital structure and repayments were representations that would have assumed actual significance in the deliberations of a reasonable investor situated similarly to Plaintiff. The omissions were material information that reasonable investors, including Plaintiff, would have wanted to have known and if he had known this information, he would not have invested in these investment contracts.

50. Plaintiff reasonably and justifiably relied upon Defendant's representations touting the value of the real estate ventures, the expected payouts on the investment contracts and the security of the first mortgages. Plaintiff's reliance was reasonable.

51. The Notes are securities because they are investment contracts in which Plaintiff pooled his money and Defendant represented that Plaintiff would participate in the profit from the efforts of Defendant.

52. In effectuating the fraudulent sale of securities to Plaintiff, Defendant acted with scienter. Defendant either consciously or recklessly disregarded the falsity of the material representations in the emails and oral representations to Plaintiff regarding the nature and value of the investments and payoffs.

53. Defendant had both motive and opportunity to commit fraud because Defendant received substantial funds from Plaintiff.

54. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff suffered damages in connection with his purchases of the investment contracts in the various real estate ventures solicited and managed by Defendant.

### Count II – Control Person Liability
### (Section 20(a) of the Exchange Act)

55. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

56. Defendant Dvorak acted as a controlling person of Pinnacle, Danville and Buchanan within the meaning of Section 20(a) of the Exchange Act. By reason of his position as a principal and owner of these entities, he had the power and authority to cause them to engage

in the wrongful conduct complained of herein. Based on this conduct, Defendant is liable pursuant to Section 20(a) of the Exchange Act.

## Count III – Illinois Securities Law of 1953

57. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

58. This Count is brought pursuant to the Illinois Securities Law of 1953, 815 ILCS 5/1, et seq.

59. Defendant prepared and disseminated false information regarding the investment contracts knowing or having reasonable grounds to know such representations were false or untrue and material as identified above.

60. Each of these misrepresentations and omissions was material in the sense that any similarly situated reasonable investor would have considered them important in deciding whether to acquire an investment contract.

61. Defendant acted either with knowledge that the above alleged statements were false or they recklessly disregarded the falsity of these statements or the materiality of the omissions.

62. Plaintiff reasonably relied on the misrepresentations and omissions of Defendant in deciding to purchase the investment contracts. Plaintiff's reliance was justifiable and reasonably foreseeable.

## Count IV – Common Law Fraud

63. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

64. Defendant prepared and disseminated false information regarding the investment contracts knowing or having reasonable grounds to know such representations were false or untrue and material as identified above.

65. Each of these misrepresentations and omissions was material to Plaintiff and he considered them important in deciding whether to invest in the various real estate investments.

66. Defendant knew that the above alleged statements were false and acted with reckless disregard as to their falsity.

67. Plaintiff reasonably relied on the misrepresentations and omissions of Defendant in deciding to purchase the investment contracts with Defendant. Plaintiff's reliance was justifiable and reasonably foreseeable.

68. As a direct and proximate result of Defendant's material misrepresentations and omissions, Plaintiff has lost over $1.9 million.

### Count V – Embezzlement

69. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

70. Defendant induced Plaintiff's investments, which were entrusted to Defendant to be used for the stated investment purposes to earn profits for Plaintiff. On information and belief, Defendant misappropriated and did not use the funds for authorized purposes. Rather, Defendant used the funds for his personal use and did not use them for the stated investment purposes for the benefit of Plaintiff. On information and belief, Defendant intentionally used the funds for personal use (including for use by entities that he controlled) and concealed the use of funds from Plaintiff.

71. Defendant has therefore intentionally embezzled Plaintiff's investment funds as set forth above.

### Count VI – Conversion

72. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

73. Defendant induced Plaintiff's investments, which were entrusted to Defendant to be used for the stated investment purposes to earn profits for Plaintiff. On information and belief, Defendant misappropriated and did not use the funds for authorized purposes. Rather, Defendant used the funds for his personal use and did not use them for the stated investment purposes for the benefit of Plaintiff. On information and belief, Defendant intentionally used the funds for personal use (including for use by entities that he controlled) and concealed the use of funds from Plaintiff.

74. Defendant has therefore intentionally converted Plaintiff's investment funds as set forth above.

75. As a direct and proximate result of Defendant's illegal conversion of funds, Plaintiff has lost $1.9 million in investment funds, plus agreed-upon contract rate of interest that has accrued to a total loss of over $4.7 million.

### Count VII – 11 U.S.C. 523(a)(2)(A)

76. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

77. The debts owed by Defendant to Plaintiff pursuant to Counts I through VI are nondischargeable pursuant to Section 523(a)(2)(A).

## Count VIII – 11 U.S.C. 523(a)(4)

78. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

79. The debts owed by Defendant to Plaintiff pursuant to Counts I through VI are nondischargeable pursuant to Section 523(a)(4).

## Count IX – 11 U.S.C. 523(a)(19)

80. Plaintiff repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

81. The debts owed by Defendant to Plaintiff pursuant to Counts I through VI are nondischargeable pursuant to Section 523(a)(19).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor on all Counts and grant him the following relief:

(a) Compensatory damages, including prejudgment interest;

(b) Attorneys fees and costs, including expert witness fees;

(c) Punitive damages; and

(d) Such further relief as may be appropriate.

August 31, 2011

Respectfully submitted,

Jeffrey W. Leasure, Esq.
Florida Bar No. 348287
Jeffrey W. Leasure, P.A.
Attorneys for JOHN MCKAY
P.O. Box 61169
Fort Myers, FL 33906-1169
(239) 275-7797
(239) 275-6856 (fax)
jwl@leasurelaw.com

Of Counsel:
Nancy A. Temple
Katten & Temple LLP
542 S. Dearborn, Suite 1060
Chicago, IL 60605
(312) 663-0800
(312) 663-0900 (fax)
ntemple@kattentemple.com